[No. 41198-9-II. Division Two. May 10, 2012.]

FREEDOM FOUNDATION, *Appellant*, v. THE DEPARTMENT OF
TRANSPORTATION, DIVISION OF WASHINGTON STATE
FERRIES, *Respondent*.

*Michael J. Reitz,* for appellant.

*Robert M. McKenna, Attorney General,* and *Lawrence S. Lockwood* and *Douglas D. Shaftel, Assistants,* for respondent.

*William J. Crittenden* and *Patrick D. Brown* on behalf of Washington Coalition for Open Government, amicus curiae.

¶1 VAN DEREN, J. — Following a ferry accident in Seattle, Freedom Foundation[1] filed a public records request with Washington State Ferries/Washington State Department of Transportation (WSDOT), seeking accident investigation

---

[1] During the course of this litigation, Appellant Evergreen Freedom Foundation changed its name to Freedom Foundation, and successfully moved this court to change the case name to reflect that change.

reports.[2] WSDOT provided reports, including that mandatory drug and alcohol testing of the ferry's crew members was conducted, but it redacted individual test results and other information. Freedom Foundation (Foundation) filed a chapter 42.56 RCW Public Records Act (PRA) suit, seeking disclosure of unredacted records. The trial court granted WSDOT's summary judgment motion denying disclosure of the requested records. The primary contention on appeal concerns whether the trial court properly ruled that WSDOT properly redacted the crew's drug and alcohol test results in compliance with a federal regulation, 49 C.F.R. § 40.321,[3] directing marine employers to keep test results confidential, because that regulation qualifies as an "other statute" exemption under RCW 42.56.070(1). WSDOT concedes on appeal that its initial redactions were overbroad.

¶2 We hold that 49 C.F.R. § 40.321 and its enabling federal statute qualify as an "other statute" exemption under RCW 42.56.070(1), and that the trial court properly granted summary judgment to WSDOT. But we accept WSDOT's concession that its initial redactions were overbroad and remand for determination of costs, fees, and daily penalties and award the Foundation proportional attorney fees on appeal.

## FACTS

¶3 The material facts are not in dispute. On August 30, 2009, the Washington State ferry M/V *Wenatchee* ran into the Coleman Dock at Pier 52 in Seattle in heavy fog with enough force to cause moderate damage to both the dock and the vessel. The impact also caused a ferry passenger to fall to the deck and to suffer facial injury. Washington State Ferries, as a subdivision of WSDOT, and a marine employer subject to United States Coast Guard (USCG) regulations,

---

[2] The Washington Coalition for Open Government filed an amicus brief in support of Foundation's appeal.

[3] All C.F.R. citations used in this opinion are current through January 19, 2012.

initiated mandatory chemical testing of its employees directly involved in the allision[4] incident.[5] The drug and alcohol test results were documented on the appropriate USCG and United States Department of Transportation (USDOT) forms in compliance with USCG regulations. *See* 46 C.F.R. § 4.06-60.

¶4 The Foundation submitted two separate requests for records under the PRA for records related to the incident, and WSDOT released 10 test-related form documents with drug and alcohol test results redacted. These redacted forms are at issue in this case.

¶5 WSDOT received Foundation's first public records request on August 31, 2009. WSDOT acknowledged the request within five days on September 1, 2009, and designated the matter as number PDR-09-0968 (Foundation's First Request). WSDOT identified potentially responsive records and reviewed them for confidential or otherwise exempt information with assistance of legal counsel before releasing them to Foundation on November 5, 2009.[6]

¶6 In the records produced in response to the Foundation's First Request, WSDOT included a copy of USCG 2692B, a form used by marine employers when reporting drug and alcohol test results after a serious marine incident. *See* 46 C.F.R. § 4.06-60. The USCG 2692B was re-

---

[4] An "allision" involves contact between a moving vessel and a stationary vessel or object.

[5] Marine employers are required to conduct alcohol and drug testing of employees involved in any "serious marine incident," defined as including an injury to a passenger that requires professional medical treatment beyond first aid, and/or property damage greater than $100,000. *See* 46 C.F.R. § 4.03-2(a)(2), (3); § 4.06-3; Clerk's Papers at 88.

[6] There is some discrepancy in the record as to whether WSDOT initially released records on November 5 or November 9. But in its response brief, WSDOT agrees with Foundation that it initially provided redacted records on November 5, 2009.

dacted in accord with WSDOT's understanding of USCG requirements.[7]

¶7 The Foundation objected to the redactions to USCG 2692B in a letter that WSDOT received on November 19, 2009. WSDOT again consulted with legal counsel and, in a letter dated November 24, 2009, notified the Foundation that it would not release the redacted information.

¶8 The Foundation asked the State Attorney General's Office (AGO), under RCW 42.56.530, to review WSDOT's redactions to USCG 2692B.[8] The AGO issued a letter opinion to the Foundation concluding that federal law requires WSDOT to redact individual alcohol test results from the form and, thus, the agency properly determined that the test results are exempt from public disclosure. And WSDOT learned that the USCG had confirmed that drug and alcohol test information had to be redacted from USCG 2692B before the form was released to the public.

¶9 Nevertheless, after further consultation with its legal counsel, WSDOT reconsidered the scope of its redactions and released a revised redacted version of the USCG 2692B. Although redactions to the alcohol test results remained, WSDOT removed redactions regarding other information, such as the type of tissue or urine sample that was provided and how soon after the incident those samples were provided.[9]

---

[7] As required by RCW 42.56.210(3), WSDOT sent the Foundation a denial letter and exemption log on November 5, 2009, explaining the basis of the redactions to the USCG 2692B form.

[8] RCW 42.56.530 provides that

[w]henever a state agency concludes that a public record is exempt from disclosure and denies a person opportunity to inspect or copy a public record for that reason, the person may request the attorney general to review the matter. The attorney general shall provide the person with his or her written opinion on whether the record is exempt.

[9] As discussed below, WSDOT concedes on appeal that its initial redactions to USCG 2692B, as released November 5, 2009, were overbroad because the redactions included drug and alcohol related information that was not a test

¶10 The Foundation made a second records request on November 19, 2009, which WSDOT identified as PDR-09--1322 (Foundation's Second Request). WSDOT's December 22, 2009 response to the Foundation's Second Request included the same USCG 2692B form that had already been provided to the Foundation's First Request and had the same information redacted as in WSDOT's original (Nov. 9, 2009) production. In addition, WSDOT released seven USDOT alcohol test forms and two pages containing drug and alcohol test summary information WSDOT acquired as part of the USCG's postincident investigation. The initial redactions to these records (the 10 forms) were similar to the initial redactions made to USCG 2692B.

¶11 On April 16, 2010, the Foundation filed the present action for disclosure of public records in Thurston County Superior Court. Both the Foundation and WSDOT filed for summary judgment. The trial court denied the Foundation's motion for summary judgment and granted summary judgment in favor of WSDOT, finding that 49 C.F.R. § 40.321 prohibits WSDOT from releasing drug and alcohol test records,[10] and that the federal regulation falls within the "other statute" exemption in RCW 42.56.070(1). The Foundation appealed.

¶12 On September 30, 2010, two weeks after the Foundation filed its appeal, WSDOT supplied the Foundation with new copies of the 10 forms that the agency had previously produced on December 22, 2009, but with fewer redactions.[11] In its response to the Foundation's appeal, WSDOT admits that its prior redactions were overbroad. WSDOT continues to withhold the individual test results of the *Wenatchee* crew members, but the documents WSDOT

---

result. WSDOT contends that it corrected this error on February 5, 2010, when it provided revised redactions.

[10] The trial court did not reach WSDOT's alternative argument based on federal preemption.

[11] WSDOT moved to supplement the record with these documents when it filed its response brief, and a commissioner of this court granted the motion on April 7, 2011.

produced on September 30, 2011, supplied information about the tested employees' identities, the testing circumstances, and the testing methodologies. WSDOT asks that we remand for a determination of penalties, costs, and fees for the time period of November 5, 2009, until September 30, 2010.

## ANALYSIS

¶13 Foundation contends that the trial court erred in ruling that 49 C.F.R. § 40.321 falls within the "other statute" exemption of RCW 42.56.070(1). We disagree.

### I. STANDARD OF REVIEW

¶14 Our review of agency actions under the PRA is de novo. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 715, 261 P.3d 119 (2011) (citing RCW 42.56.550(3)). We review interpretations of law de novo. *Neighborhood Alliance*, 172 Wn.2d at 715. We review grants of summary judgment de novo, and we engage in the same inquiry as the trial court. *Neighborhood Alliance*, 172 Wn.2d at 715. A public records case may be decided based on affidavits alone. *O'Neill v. City of Shoreline*, 170 Wn.2d 138, 153-54, 240 P.3d 1149 (2010). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Here, there are no material facts in dispute.

### II. PUBLIC RECORDS ACT STATUTORY EXEMPTIONS

¶15 "The PRA is a strongly worded mandate for broad disclosure of public records." *Neighborhood Alliance*, 172 Wn.2d at 714. The PRA "stands for the proposition that 'full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society.' " *Neighborhood Alliance*, 172 Wn.2d at 714-15 (quoting *Progressive Animal Welfare Soc'y v. Univ. of Wash.*,

125 Wn.2d 243, 251, 884 P.2d 592 (1994); RCW 42.17A-.001(11)). The PRA requires agencies to disclose any public record on request unless the record falls within a specific, enumerated exemption. *Neighborhood Alliance,* 172 Wn.2d at 715 (citing RCW 42.56.070(1)). RCW 42.56.070(1) provides in relevant part, "Each agency, in accordance with published rules, shall make available for public inspection and copying all public records, *unless* the record falls within the specific exemptions [listed in] this section, this chapter, *or other statute which exempts or prohibits disclosure* of specific information or records." (Emphasis added.) *See Ameriquest Mortg. Co. v. Office of Attorney Gen.,* 170 Wn.2d 418, 440, 241 P.3d 1245 (2010) ("[T]he PRA's 'other statute' exemption allows for a separate statute to preclude disclosure of 'specific information' or entire 'records.' RCW 42.56.070(1).").

A. "Other Statute" Exemption under RCW 42.56.070(1)

¶16 The primary legal dispute here is whether a federal regulation, 49 C.F.R. § 40.321, which provides for confidentiality of drug and alcohol testing results, can prohibit disclosing public employee test results sought through a Washington PRA request, test results that address public employee job performance of interest to Washington's citizens.

¶17 We rely on our Supreme Court's resolution of this issue in its recent decision in *Ameriquest,* 170 Wn.2d 418. There, our Supreme Court addressed another federal regulation addressing different privacy protections,[12] but *Ameriquest* establishes the rule that federal regulations with their enabling statutes qualify as "other statute" ex-

---

[12] *Ameriquest* addressed the Gramm-Leach-Bliley Act, former 15 U.S.C. §§ 6801-6809 (1999), and the relevant Federal Trade Commission regulations, 16 C.F.R. § 313, which required financial institutions to protect customer privacy. 170 Wn.2d at 424. At issue was whether these federal provisions preempted the PRA or otherwise barred the Attorney General's Office from disclosing customer information received from Ameriquest during an investigation. *Ameriquest,* 170 Wn.2d at 424.

emptions under RCW 42.56.070(1). 170 Wn.2d at 440. Our Supreme Court explained as follows:

> Although the PRA requires state agencies to "make available for public inspection and copying all public records," the PRA provides an exemption to this disclosure requirement if there is any "other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1). This other statute exemption avoids any inconsistency and allows the federal regulation's privacy protections to supplement the PRA's exemptions. We have held numerous other state statutes' disclosure prohibitions are thus incorporated into the PRA. *See Hangartner v. City of Seattle,* 151 Wn.2d 439, 453, 90 P.3d 26 (2004) (RCW 5.60.060(2)(a)); *Progressive Animal Welfare Society v. Univ. of Wash.,* 125 Wn.2d 243, 261-63, 884 P.2d 592 (1994) (ch. 19.108 RCW; RCW 4.24.580). We see no reason why federal law should be treated differently. We conclude that the [federal statute] (together with the [federal regulation] enforcing it) is an "other statute." RCW 42.56.070(1).

*Ameriquest,* 170 Wn.2d at 439-40.

¶18 Here, both the federal regulation and its underlying statute speak to confidentiality of these particular test results. 49 C.F.R. § 40.321 provides in relevant part that an employer is "prohibited from releasing individual test results or medical information about an employee to third parties without the employee's specific written consent." The underlying enabling statute, 49 U.S.C. § 5331, provides in relevant part as follows:

> (b) TESTING PROGRAM FOR PUBLIC TRANSPORTATION EMPLOYEES.— (1)(A) In the interest of public transportation safety, the Secretary shall prescribe regulations that establish a program requiring public transportation operations that receive [specified federal] financial assistance . . . to conduct . . . post-accident testing of public transportation employees responsible for safety-sensitive functions (as decided by the Secretary) for the use of a controlled substance . . . and . . . for the use of alcohol in violation of law or a United States Government regulation.

49 U.S.C. § 5331(b)(1)(A).

In prescribing regulations under this subsection, the Secretary of Transportation—

. . . may require that post-accident testing of such a public transportation employee be conducted when bodily injury or significant property damage occurs in any other serious accident involving public transportation.

49 U.S.C. § 5331(b)(2)(B).

TESTING AND LABORATORY REQUIREMENTS.—In carrying out subsection (b) of this section, the Secretary of Transportation shall develop requirements that shall—

. . . promote, to the maximum extent practicable, individual privacy in the collection of specimens;

[and] provide for the confidentiality of test results . . . .

49 U.S.C. § 5331(d)(1), (7).

(f) RELATIONSHIP TO OTHER LAWS, REGULATIONS, STANDARDS, AND ORDERS.—(1) A State or local government may not prescribe, issue, or continue in effect a law, regulation, standard, or order that is inconsistent with regulations prescribed under this section.

49 U.S.C. § 5331(f)(1).

■ ¶19 The directive in 49 U.S.C. § 5331, requiring the secretary to prescribe regulations that protect the confidentiality of employee postaccident drug and alcohol test results, was fulfilled in 49 C.F.R. § 40.321's prohibition against release of drug and alcohol test results without the employee's consent. Accordingly, we hold that the confidentiality protections directed by the federal statute (49 U.S.C. § 5331) that are implemented in the federal regulation (49 C.F.R. § 40.321) amount to an "other statute" exemption to the PRA's disclosure requirements under RCW 42.56-.070(1). *See Ameriquest*, 170 Wn.2d at 439-40.

B. 49 C.F.R. § 40.321 Does Not Contradict Its Enabling Statute

¶20 The Foundation attempts to distinguish *Ameriquest* by arguing that the federal regulation here is "inconsistent

with its underlying statute." Br. of Appellant at 25. We reject this contention.

¶21 The Foundation points to 49 U.S.C. § 5331(d)(7), which states that the secretary of transportation shall develop requirements that shall "provide for the confidentiality of test results and medical information *(except information about alcohol or a controlled substance)* of employees, except that this clause does not prevent the use of test results for the orderly imposition of appropriate sanctions under this section." (Emphasis added.) The Foundation focuses on the parenthetical language, arguing that USDOT misconstrued the plain meaning of this section when it adopted 49 C.F.R. § 40.321. But that argument ignores the other portions of 49 U.S.C. § 5331 set out above.

¶22 Our Supreme Court has mandated that the entire statute must be considered when we review an agency's interpretation of a statute that the agency is charged with administering:

> When we review an agency's construction of a federal statute, we must determine whether Congress has directly spoken on the question at issue and has clearly indicated its intent. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). If it has, then "that is the end of the matter," and we must give effect to that intent. *Chevron*, 467 U.S. at 842. While engaging in this analysis, we must look to the statute in its entirety—all of its provisions, its object, and its policy—not just at the particular language in isolation. *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35, 110 S. Ct. 929, 108 L. Ed. 2d 23 (1990). If, on the other hand, "the statute is silent or ambiguous with respect to the specific issue, the question for [us] is whether the agency's [interpretation] is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. In such cases, the interpretation of the agency charged with administering the statute is generally entitled to deference, and to sustain it we need only find that the agency's interpretation was sufficiently rational to preclude us from substituting our judgment for that of the agency.

*Skamania County v. Columbia River Gorge Comm'n*, 144 Wn.2d 30, 42-43, 26 P.3d 241 (2001).

¶23 Read in the context of other § 5331 provisions, the text of 49 U.S.C. § 5331(d)(7), requiring the secretary to adopt procedures that "provide for the confidentiality of test results," is reasonable only if read to refer to adoption of regulations protecting the confidentiality of drug and alcohol test results. We are required to give meaning to every word, clause, and sentence of a statute so that no part is rendered superfluous. *See Cox v. Helenius*, 103 Wn.2d 383, 387-88, 693 P.2d 683 (1985); *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 585, 192 P.3d 306 (2008).

¶24 Here, applying the parenthetical "(except information about alcohol or a controlled substance)" to both preceding phrases ("test results" and "medical information") would be at odds with other portions of § 5331, and would render confidentiality of drug and alcohol test results meaningless. 49 U.S.C. § 5331(d)(7). The more rational reading of the provision, giving meaning to all its parts and harmonizing this provision with other portions of § 5331, applies the first phrase "provide for the confidentiality of" to both "test results" and "medical information"; and reading the parenthetical provision, excepting "information about alcohol or a controlled substance," which immediately follows "medical information," as qualifying "medical information" only, and not qualifying "test results." 49 U.S.C. § 5331(d)(7); *see Am. Legion Post No. 149*, 164 Wn.2d at 585 (the goal is to avoid interpreting statutes to create conflicts between different provisions so that we achieve a harmonious statutory scheme).

¶25 The Foundation's view that the parenthetical provision excepting "information about alcohol or a controlled substance" modifies both "medical information" and "test results" suggests an ambiguity regarding how 49 U.S.C. § 5331(d)(7) may be interpreted and applied. In this circumstance, USDOT's interpretation in adopting 49 C.F.R. § 40.321 is entitled to deference as a rational reading of the

statute within the agency's expertise. *Columbia River Gorge Comm'n*, 144 Wn.2d at 42-43; *Chevron*, 467 U.S. at 843. Accordingly, we reject the Foundation's contention that 49 C.F.R. § 40.321 is inconsistent with its underlying statute, 49 U.S.C. § 5331.

C. Force of Law

¶26 Next, the Foundation argues that a mere regulation cannot support an exemption under the PRA. The Foundation contends that a specific *statutory* exemption is required. But none of the cases that Foundation relies on[13] addresses the circumstance presented in this case and in *Ameriquest*, where a federal regulation has been promulgated under authority of a federal statute to fulfill the statute's directive. The regulation here, 49 C.F.R. § 40.321, exists with and because of its enabling statute, 49 U.S.C. § 5331, and in such circumstance, the federal regulation has the force of law.

¶27 To have the force and effect of law, the agency pronouncement must (1) prescribe substantive rules and (2) conform to certain procedural requirements. *United States v. Fifty-Three (53) Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982). To satisfy the first requirement, the rule must be legislative in nature, affecting individual rights and obligations and, to satisfy the second, it must have been promulgated under a specific statutory grant of authority and conform with the procedural requirements Congress imposed. *Fifty-Three (53) Eclectus Parrots*, 685 F.2d at 1136; *see also Howard v. City of Burlingame*, 937 F.2d 1376, 1380

---

[13] Foundation relies on the following cases: *Rental Housing Association of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 199 P.3d 393 (2009); *Bellevue John Does 1-11 v. Bellevue School District No. 405*, 164 Wn.2d 199, 189 P.3d 139 (2008); *Livingston v. Cedeno*, 164 Wn.2d 46, 186 P.3d 1055 (2008); *Amren v. City of Kalama*, 131 Wn.2d 25, 929 P.2d 389 (1997); *Servais v. Port of Bellingham*, 127 Wn.2d 820, 904 P.2d 1124 (1995); *Progressive Animal Welfare Society v. University of Washington*, 125 Wn.2d 243, 884 P.2d 592 (1994); *Brouillet v. Cowles Publishing Co.*, 114 Wn.2d 788, 791 P.2d 526 (1990); *Spokane Police Guild v. Washington State Liquor Control Board*, 112 Wn.2d 30, 769 P.2d 283 (1989); *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 580 P.2d 246 (1978). But, as noted, none of these cases address the circumstance presented here.

(9th Cir. 1991) (federal regulations have the force of law and may define legal obligations).

█ ¶28 Here, 49 C.F.R. § 40.321 meets the requirements to have force of law. It creates substantive rights in tested individuals, who must expressly consent to the release of their test results. The regulation was promulgated under the authority of 49 U.S.C. § 5331 and fulfills that statute's directive. And finally, its appearance in the Code of Federal Regulations suggests that 49 C.F.R. § 40.321 was properly enacted and intended to be binding. *Cf. United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1168 (9th Cir. 2000) (regulation's absence from Code of Federal Regulations or the Federal Register, provides evidence that the regulation was not intended to be binding). Accordingly, 49 C.F.R. § 40.321 has the force of law. And under *Ameriquest*, it qualifies as an "other statute" exemption under RCW 42.56.070(1).

## III. USCG REGULATIONS

█ ¶29 The Foundation also raises an argument for the first time on appeal that the USCG did not adopt the USDOT's alcohol testing procedures and, thus, the confidentiality provisions of 49 C.F.R. § 40.321 do not apply to the alcohol testing of marine employees. We disagree.[14]

¶30 In making this new argument, the Foundation relies on 46 C.F.R. § 16.500, which sets forth what forms are to be used, when, and to whom reports are to be sent regarding the reporting and collection of chemical testing data.

---

[14] Normally, we will not consider issues raised for the first time on appeal. In reviewing the trial court's decision on summary judgment, our review "is limited . . . to the evidence and issues presented to the trial court. RAP 9.12." *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 733-34, 218 P.3d 196 (2009); *Sourakli v. Kyriakos, Inc.*, 144 Wn. App. 501, 509, 182 P.3d 985 (2008) (an argument neither pleaded nor argued to the trial court cannot be raised for the first time on appeal). But we have inherent authority to consider issues not raised by the parties if doing so is necessary to a proper decision, as it is here. *Bennett v. Hardy*, 113 Wn.2d 912, 918-19, 784 P.2d 1258 (1990).

*See* 46 C.F.R. § 16.500(a)-(c).[15] The Foundation again appears to rely on language taken out of context, since this regulation addresses reporting and data collection for purposes of USCG's management information system. 46 C.F.R. § 16.500(a), addressing data collection, states:

> (a) *Data collection.* (1) All marine employers must submit drug testing program data required by 49 CFR 40.26 and Appendix H to 49 CFR part 40
>
> (2) The provisions in 49 CFR part 40 for alcohol testing do not apply to the Coast Guard or to marine employers, and alcohol testing data is not required or permitted to be submitted by this section.

The Foundation points to the language of § 16.500(a)(2) before the comma as establishing that the alcohol testing provisions of 49 C.F.R. part 40 do not apply to marine employers, thus, the confidentiality provisions of 49 C.F.R. § 40.321 do not apply to the alcohol testing of marine employees, and thus, WSDOT had no basis for failing to disclose the alcohol test results in response to the Foundation's public disclosure request.

¶31 The language in 46 C.F.R. § 16.500(a)(2), in isolation, can be read to support that contention. But this provision addresses only data collection for purposes of the agency's management information system and should not be read as the USCG's definitive pronouncement on the scope and application of 49 C.F.R. part 40, regarding marine employers' drug and alcohol testing responsibilities.[16]

---

[15] The regulation requires that marine employers send reports to the USCG commandant and designates a general USDOT data collection form for that purpose. *See* 46 C.F.R. § 16.500(a)-(c).

[16] The instructions accompanying the management information system (MIS) reporting form advise that USCG-regulated employers do not report alcohol test results on the MIS form. 49 C.F.R. part 40, App. H at 4, 16. Elsewhere, the USCG explains that marine employers are required to submit annual MIS reports documenting the employer's drug testing activities for the previous year. In addressing the scope of the MIS reports, the USCG advises marine employers that "[a]lcohol tests are not required to be submitted on this MIS report as they are reported to Coast Guard on a different report form or letter. They are required to

¶32 In other regulations, as noted below, the USCG expressly incorporates the procedures in 49 C.F.R. part 40 for marine employers conducting chemical testing after a serious marine incident. USCG regulations specifically require a marine employer to ensure that all persons directly involved in a serious marine incident are "chemically tested for evidence of dangerous *drugs and alcohol* in accordance with the requirements of 46 CFR § 4.06." 46 C.F.R. § 16.240 (emphasis added).[17] A chemical test is defined in 46 C.F.R. § 16.105 as "a scientifically recognized test which analyzes an individual's breath, blood, urine, saliva, bodily fluids, or tissues for evidence of dangerous *drug or alcohol use.*" (Emphasis added.) Subpart B of 46 C.F.R. part 16, titled "Required Chemical Testing," specifically provides that "[c]hemical testing of personnel must be conducted as required by this subpart *and in accordance with the procedures detailed in 49 CFR part 40.*" 46 C.F.R. § 16.201(a) (emphasis added). Thus, the USDOT workplace testing procedures in 49 C.F.R. part 40 have been incorporated to apply to both drug and alcohol tests, making both drug and alcohol test results subject to the confidentiality provisions in 49 C.F.R. § 40.321.

IV. FEDERAL PREEMPTION

¶33 WSDOT argues alternatively that to the extent the PRA's disclosure requirements conflict with the confidentiality requirements of 49 C.F.R. § 40.321, the federal regulation preempts the PRA.[18] The trial court did not reach

be reported at the time of the test event." *See* DRUG & ALCOHOL MANAGER, OFFICE OF INVESTIGATIONS AND ANALYSIS (G-MOA), U.S. COAST GUARD HEADQUARTERS, MARINE EMPLOYERS DRUG TESTING GUIDANCE (WHAT MARINE EMPLOYERS NEED TO KNOW ABOUT DRUG TESTING) 30 (June 2005), *available at* http://www.dot.gov/odapc/testingpubs/ Marine_Employers_Drug_ Testing_Guide_2005.pdf.

[17] 46 C.F.R. § 4.06 refers to the USCG's regulations for mandatory chemical testing following serious marine incidents involving vessels in commercial service. *See* 46 C.F.R. § 4.06-1(b).

[18] Federal preemption of state law may occur in three circumstances: (1) if Congress passes a statute that expressly preempts state law, (2) if Congress preempts state law by occupation of the entire field of regulation, or (3) if the state

WSDOT's preemption argument, instead granting the agency summary judgment on the basis of RCW 42.56-.070(1)'s "other statute" exemption. On appeal, WSDOT admits that *Ameriquest* resolves the matter by determining, as the trial court did here, that the federal regulation at issue falls within the "other statute" exemption of RCW 42.56.070(1). *See* 170 Wn.2d at 439-40.

¶34 *Ameriquest* rejected a comparable preemption challenge, noting that there was no inconsistency with the federal laws at issue and the PRA. 170 Wn.2d at 439. The federal laws at issue provided that state laws would be superseded " 'only to the extent of [an] inconsistency.' " *Ameriquest*, 170 Wn.2d at 439 (alteration in original) (quoting 15 U.S.C. § 6807(a); 16 C.F.R. § 313.17(a)). Our Supreme Court held:

> Although the PRA requires state agencies to "make available for public inspection and copying all public records," the PRA provides an exemption to this disclosure requirement if there is any "other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1). This other statute exemption avoids any inconsistency and allows the federal regulation's privacy protections to supplement the PRA's exemptions.

*Ameriquest*, 170 Wn.2d at 439-40. The court noted that the federal law at issue "prohibit[s] specific information, not entire records." *Ameriquest*, 170 Wn.2d at 440. "These federal regulations are unconcerned with the containers in which the information is found. Thus, to the extent that a record contains unprotected information, the disclosure of which would not violate the [federal laws at issue], the PRA is not preempted in requiring the record's disclosure." *Ameriquest*, 170 Wn.2d at 440.

---

law conflicts with federal law due to impossibility of compliance with state and federal law or when state law acts as an obstacle to the accomplishment of the federal purpose. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 326-27, 858 P.2d 1054 (1993). WSDOT contends that the third alternative (conflict/impossibility/obstacle) operates here.

¶35 The same is true here. Like the federal law at issue in *Ameriquest*, the underlying federal statute here expressly supersedes only "inconsistent" state provisions. *See* 49 U.S.C. § 5331(f)(1) ("A State or local government may not prescribe, issue, or continue in effect a law, regulation, standard, or order that is *inconsistent* with regulations prescribed under this section." (emphasis added)). Also, like *Ameriquest*, the federal regulation here prohibits disclosure of only specific information (individual test results), rather than entire records. Thus, other information that is unprotected by the federal regulation may be disclosed under the PRA. We hold that under these circumstances, there is no federal preemption by virtue of RCW 42.56.070(1)'s "other statute" exemption as applied in *Ameriquest*.

V. COSTS, FEES, AND PENALTIES

¶36 Finally, the Foundation argues that WSDOT's redactions to the responsive records that the agency initially provided were overbroad, in that the redactions included more than test results. The Foundation contends that although WSDOT subsequently provided documents with fewer redactions on February 5, 2010, and again after this appeal was filed, the Foundation is entitled to costs, attorney fees, and per day penalty assessments for the nondisclosure of the requested information from the date of the request until disclosure.

¶37 WSDOT concedes that its initial responsive documents contained overbroad redactions. The agency requests that we remand to the trial court for a determination of costs, fees, and per day penalties from November 5, 2009, the date of WSDOT's initial provision of redacted responsive documents, until September 30, 2010, when the agency provided documents with revised redactions. We accept WSDOT's concession[19] and remand for assessment of costs,

---

[19] WSDOT's concession is well taken. The PRA requires the trial court to assess a daily penalty where the agency erroneously withholds a requested public record. *Yousoufian v. Office of Ron Sims*, 152 Wn.2d 421, 440, 98 P.3d 463 (2004); *see also*

fees, and per day penalties on an apportioned basis for redactions of requested information that did not qualify as exempt test results under 49 C.F.R. § 40.321, which is incorporated as an "other statute" exemption under RCW 42.56.070(1), as decided herein.

## VI. ATTORNEY FEES

¶38 As for fees on appeal, WSDOT contends that we should not award costs and fees on appeal to the Foundation unless we determine that the drug and alcohol test results, which WSDOT continues to withhold, are not exempt from disclosure. In reply, the Foundation argues that given WSDOT's concession that its initial redactions were overbroad and WSDOT's production of documents with fewer redactions after the appeal was filed, the Foundation is entitled to an apportioned award of costs and fees on appeal as the prevailing party.

¶39 The Foundation is correct. A requesting party suing an agency for disclosure of records is entitled to a proportional award of fees and costs on appeal regarding those issues on which the requester prevailed. *Sanders v. State*, 169 Wn.2d 827, 870-71, 240 P.3d 120 (2010). Accordingly, we award the Foundation such proportional costs and fees on appeal.

¶40 In sum, we affirm the trial court's grant of summary judgment to WSDOT on the exemption of drug and alcohol

---

*Neighborhood Alliance*, 172 Wn.2d at 727 (remedial daily penalty provisions of PRA are triggered when agency fails to properly disclose and produce records, and any intervening disclosure serves only to stop the clock on daily penalties). Also, in addition to daily penalties, a party prevailing against an agency in a PRA action may be awarded costs and attorney fees. *Neighborhood Alliance*, 172 Wn.2d at 725-26 (citing RCW 42.56.550(4)). As our Supreme Court has explained:

"[P]revailing" relates to the legal question of whether the records should have been disclosed *on request*. Subsequent events do not affect the wrongfulness of the agency's initial action to withhold the records if the records were wrongfully withheld at that time. Penalties may be properly assessed for the time between the request and the disclosure, even if the disclosure occurs for reasons unrelated to the lawsuit.

*Neighborhood Alliance*, 172 Wn.2d at 726 (quoting *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 103-04, 117 P.3d 1117 (2005)).

test results under the PRA, but we remand for determination of costs, fees, and daily penalties in accord with WSDOT's concession, and we award the Foundation proportional attorney fees on appeal in an amount to be decided upon the Foundation's compliance with RAP 18.1.

WORSWICK, A.C.J., concurs.

¶41 QUINN-BRINTNALL, J. (concurring) — I concur in the result reached by my colleagues but write separately to stress that absent 49 C.F.R. § 40.321, the drug and alcohol test results of public employees working in heavily regulated industries (like common carriers) would be subject to the Public Records Act (PRA), ch. 42.56 RCW, under Washington law. Although I agree that summary judgment is proper, I do so not because a federal statute creates an exemption to PRA disclosure (which may or may not be asserted by a government agency), but because, here, federal law preempts the PRA's "strongly worded mandate for broad disclosure of public records." *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 714, 261 P.3d 119 (2011).

¶42 Washington's PRA asserts,

The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created. This chapter shall be liberally construed and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected. In the event of conflict between the provisions of this chapter and any other act, the provisions of this chapter shall govern.

RCW 42.56.030.

¶43 Despite this bold language, a later amendment to the PRA, RCW 42.56.070(1), allows a government agency to

exercise disclosure exemptions for any "other statute which exempts or prohibits disclosure of specific information or records." For instance, in *Hangartner v. City of Seattle*, 151 Wn.2d 439, 453, 90 P.3d 26 (2004), our Supreme Court determined that the attorney-client privilege, codified at RCW 5.60.060(2)(a), was an "other statute" disclosure exemption for purposes of PRA compliance "[b]ecause RCW 5.60.060(2)(a) is unquestionably a statute other than RCW 42.17.260(6), 42.17.310, or 42.17.315 that prohibits the disclosure of certain records, documents that fall under RCW 5.60.060(2)(a) are exempt from the public disclosure act." Prior to our Supreme Court's recent opinion in *Ameriquest Mortgage Co. v. Office of Attorney General*, 170 Wn.2d 418, 241 P.3d 1245 (2010) (*Ameriquest* II), such "added" exemptions to the PRA were limited—and limited to statutes promulgated by the Washington Legislature.

¶44 *Ameriquest* II dealt with the privacy of nonpublic information in circumstances that were decidedly different from those presented by the case before us. In *Ameriquest* II, the privacy right at stake involved the private financial information of *ordinary citizens* seeking mortgages: following a settlement agreement between the Washington State Office of the Attorney General (AGO) and Ameriquest Mortgage Company, a member of the public invoked the PRA in an attempt to obtain sensitive financial documents collected by the AGO during its investigation of Ameriquest's lending practices. 170 Wn.2d at 424. The AGO notified Ameriquest that it intended to comply with the PRA request. *Ameriquest* II, 170 Wn.2d at 427. Ameriquest sought and received an injunction against the AGO that barred the release of the citizen customers' private financial information at issue. *Ameriquest* II, 170 Wn.2d at 428.

¶45 On direct appeal to this court, the AGO argued that because it was neither a financial institution nor a "nonaffiliated third party," the federal statute at issue there—the Gramm-Leach-Bliley Act (the GLBA), 15 U.S.C. §§ 6801-6809—did not apply to it and that it was required under the

PRA to disclose the information requested. *Ameriquest Mortg. Co. v. Attorney Gen.*, 148 Wn. App. 145, 160-61, 199 P.3d 468 (2009) (*Ameriquest* I), *aff'd*, 170 Wn.2d 418. At that time, the AGO's argument did not persuade us:

> The GLBA's definition of a "nonaffiliated third party" is purposefully broad to better protect nonpublic customer information from those who would misuse it. On this issue, the AGO is situated no differently than [other nonaffiliated third parties]. We hold that the AGO is a nonaffiliated third party and the GLBA's confidentially provisions apply. This federal provision prohibiting disclosure of information directly conflicts with Washington's PRA and thus, the GLBA's nondisclosure provisions preempt the PRA.

*Ameriquest* I, 148 Wn. App. at 162 (footnote omitted). In arriving at this result, we stressed that "the GLBA prohibits only release of nonpublic information" and, accordingly, the AGO could still release publicly available information in the loan customers' files—a factual determination the trial court needed to address on remand. *Ameriquest* I, 148 Wn. App. at 165.

¶46 Our Supreme Court granted review of our decision in *Ameriquest* I solely to address whether " 'federal law preempts or precludes disclosure of information in the loan files held by the Attorney General.' " *Ameriquest* II, 170 Wn.2d at 428-29. Although the court did not directly overrule our decision, it upheld the applicability of the GLBA's nondisclosure provisions on the grounds that having "held numerous other state statutes' disclosure prohibitions are . . . incorporated into the PRA," it could "see no reason why federal law should be treated differently." *Ameriquest* II, 170 Wn.2d at 440. In essence, in *Ameriquest* II, our Supreme Court held that a federal statute creates an exemption to the PRA. The majority applies this exemption rationale in its opinion upholding summary judgment in this case.

¶47 It is this exemption creation reasoning from which I depart; the broadly worded intent of the PRA should not be

read to so easily allow the mere existence of a federal statute to curtail access to public information. Absent a judicial finding of preemption, we should not read a federal statute to create an unintentional, if not unwitting, exemption to the public's right to access its own records.

¶48 In situations like those presented in *Hangartner*—situations where the privacy provisions of one law duly enacted by the Washington legislature conflict with the disclosure requirements of another duly enacted Washington law (the PRA)—it is necessary and appropriate to apply RCW 42.56.070(1) to harmonize the conflicting provisions. But where privacy provisions of federal law conflict with the PRA, requiring a finding of preemption is necessary to safeguard public access. A preemption finding is necessary to assure Washington's citizens that the information is being withheld because federal law constrains the disclosure and not by virtue of a judicially created PRA exemption that may or may not be asserted by the government agency holding the information sought. Augmenting (or restricting) exemptions to the PRA is a function better left to Washington's elected legislators, who are presumed to act intentionally to create such an exemption with knowledge of its impact.

¶49 Here, the Freedom Foundation seeks to discover the results of a ferry employee's drug and alcohol tests following an accident serious enough to cause harm to a passenger. This is exactly the kind of public record citizens need to make informed decisions about the safety and security of Washington's common carriers and to decide whether to ride the ferry or not. Such information should be open to public review under the PRA. RCW 42.56.050 states,

A person's "right to privacy," "right of privacy," "privacy," or "personal privacy," as these terms are used in this chapter, is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public. The provisions of this chapter dealing with the right to privacy in certain

public records do not create any right of privacy beyond those rights that are specified in this chapter as express exemptions from the public's right to inspect, examine, or copy public records.

¶50 Ferry employees, like other employees engaged in highly regulated industries, are *public employees* responsible to their employer—the citizens of Washington. As operators or crew members of a vehicle transporting the public, ferry employees have a reduced reasonable expectation of privacy in their job performance while on duty. Similar to Washington's law of implied consent, under which someone who operates a motor vehicle on Washington highways is deemed to have consented to blood and alcohol testing if involved in an injury accident,[20] a public employee operating or crewing a common carrier may reasonably be required to submit to testing designed to determine whether drugs or alcohol impaired their ability to properly perform their public job duties and resulted in an injury to a passenger.

¶51 Absent the federal prohibition on disclosing test results, I question whether a legitimate privacy interest exists precluding the release of results of on-the-job drug and alcohol tests given public employees following an injury accident involving a common carrier, here a ferry boat. In accord with RCW 42.56.050, although embarrassing, the release of such information is not "highly offensive." Moreover, any legitimate discomfort the public employee may experience must give way to citizens' legitimate concerns that public employees working in highly regulated (and dangerous) fields—especially fields like the Washington State Ferry System, which transports millions of people, tourists, and their vehicles year in and year out—are not impaired by drugs and alcohol in the performance of their job duties.

---

[20] RCW 46.20.308.

¶52 The express provisions of 49 C.F.R. § 40.321, however, preclude the release of the information requested here. Under this provision, Washington State Department of Transportation (WSDOT) cannot release these records without violating the federal regulations. Put more succinctly, here our state law conflicts with federal law and it is impossible for WSDOT to comply with both the state and federal law. Thus, federal law has preempted Washington law regarding the release of these records and federal law prohibits WSDOT from releasing them. *See Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 326-27, 858 P.2d 1054 (1993) ("Federal preemption of state law may occur if . . . state law conflicts with federal law due to impossibility of compliance with state and federal law or when state law acts as an obstacle to the accomplishment of the federal purpose.").

¶53 Accordingly, I concur only in the result.