**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clientslwareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STEPHEN HORNBUCKLE, | No.82675-1-I |
| Respondent, | ORDER GRANTING MOTION TO PUBLISH OPINION |
| v. | |
| WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | |
| Appellant. | |

The respondent, Stephen Hornbuckle, having filed a motion to publish opinion, and the panel having considered the motion, and finding that the opinion dated September 26, 2022 will be of precedential value; now, therefore it is hereby

ORDERED that the unpublished opinion filed September 26, 2022 shall be published.

FOR THE COURT:

_____
Coburn, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STEPHEN HORNBUCKLE,<br><br>                        Respondent,<br><br>     v.<br><br>WASHINGTON STATE DEPARTMENT<br>OF SOCIAL AND HEALTH SERVICES,<br><br><br>                        Appellant. | No. 82675-1-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

COBURN, J. — The Washington State Department of Social and Health Services (DSHS) appeals a superior court order finding that DSHS violated the Public Records Act (PRA) by withholding documents related to a nursing facility investigation without providing a qualified exemption. DSHS, joined by amicus curiae United States, argues that 42 U.S.C. § 1306 provides an "other statute" exemption to the PRA. We disagree and affirm the trial court's summary judgment order. However, we remand for entry of findings and conclusions for the award of attorney fees below and to determine the amount of attorney fees on appeal, as well as consideration of respondent's per day penalty request.

FACTS

In June 2017, Mavis Downing, a nursing facility surveyor for DSHS, conducted a

Citations and pincites are based on the Westlaw online version of the cited material

complaint investigation related to the care and treatment of Sinisa Taimi while she was a resident at Washington Care Center, a Medicare/Medicaid certified nursing facility. That investigation was a joint federal and state investigation conducted for the purpose of enforcing both federal and state law.

The joint endeavor between the federal and state government began in 1994[1] when the federal government, through the Secretary of Health and Human Services (HHS), entered into an "1864 agreement" (Agreement) with the State of Washington to carry out the provisions of the Social Security Act.[2] HHS administers the Medicare program through the Centers for Medicare and Medicaid Services (CMS). The parties stipulate that DSHS and CMS are in a contractual relationship under the Agreement. CMS provides Medicare and Medicaid funding to Washington State, and in turn DSHS "agrees to conduct surveys of nursing homes to ensure compliance with regulations governing nursing homes that receive federal funding." This includes conducting investigations into allegations of nursing home resident neglect and abuse. 42 U.S.C. § 1395i-3(g)(1)(A), (C).

Attorney Stephen Hornbuckle represents the personal representative of Taimi's estate. On March 30, 2020, on behalf of his client, Hornbuckle made a PRA request seeking documents related to Downing's investigation.[3] Hornbuckle requested "copies of surveyor notes, investigation findings, investigation working papers, reports,

---

[1] The Agreement in the record has a signed date of August 28, 1985, but the parties stipulate that the Agreement was signed in 1994. We defer to the stipulation for the correct date.

[2] The Social Security Act Section 1864, 42 U.S.C. § 1395aa, authorizes HHS to make such agreements with state health agencies.

[3] Prior to his public records request, Hornbuckle unsuccessfully tried to obtain information through a state court subpoena for the deposition of Downing and for records related to the investigation.

SOD[/]POC,[4] recommendations, and all other records gathered or created during the course of the survey."

One week later, DSHS responded to Hornbuckle's records request. DSHS provided some of the responsive documents, but withheld investigative notes, emails and other written documents, including investigator working papers. DSHS explained that federal statute 42 C.F.R. § 488.325 lists the only documents that can be released and prohibits a state agency from releasing other records, including working papers. The letter continued:

> The federal Centers for Medicare and Medicaid Services (CMS) controls disclosure by state agencies of Medicare certification documents, because these documents were created or obtained by DSHS staff while acting on behalf of the federal government. The only Medicare certification documents that DSHS is allowed to release are listed in 42 CFR § 488.325. This regulation authorizes DSHS to release statements of deficiencies and plans of correction, but it does not authorize it to produce, under the Public Records Act, surveyor or complaint investigator working papers. Requests for Medicare survey and certification documents that cannot be produced under 42 CFR § 488.325 must be treated in accordance with the requirements of 45 (CFR) §§ 2.1 – 2.6.

The letter instructed Hornbuckle that he could submit a Federal Freedom of Information Act (FOIA) request to CMS pursuant to 45 C.F.R. pt. 5. Hornbuckle filed a FOIA request directed at CMS and obtained some responsive records.

On April 10, 2020 Hornbuckle sued DSHS, alleging that DSHS violated the PRA by withholding requested documents. In its answer, DSHS maintained that the

---

[4] Statement of deficiencies and plan of correction.

requested records were not public records as defined by RCW 42.56.010(3)[5], but were instead federal documents governed by federal law and federal regulations that limited DSHS's authority to disclose them.

Both parties moved for summary judgment. The court granted Hornbuckle's motion, finding that DSHS violated the PRA by failing to produce surveyor working papers without a valid exemption under the PRA. The court ordered DSHS to produce the documents responsive to the request at issue by May 24, 2021. DSHS appeals and amicus curiae United States joins DSHS.

Though not raised by any party as an issue, DSHS based its PRA exemption below on different authority than it does now on appeal. DSHS had relied on 42 C.F.R. 488, 45 C.F.R. 2.2, and 45 C.F.R. 2.3. On appeal, DSHS and amicus rely on 42 U.S.C. § 1306, which was not addressed below. This does not prevent our review. See Progressive Animal Welfare Soc. v. Univ. of Washington, 125 Wn.2d 243, 253, 884 P.2d 592 (1994) (declining to consider only those bases cited by the defendant in its letter denying disclosure, observing that courts are to review agency action de novo, and reasoning that "if agencies were forced to argue exhaustively all possible bases

---

[5] RCW 42.56.010(3) provides: "Public record" includes any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics. For the office of the secretary of the senate and the office of the chief clerk of the house of representatives, public records means legislative records as defined in RCW 40.14.100 and also means the following: All budget and financial records; personnel leave, travel, and payroll records; records of legislative sessions; reports submitted to the legislature; and any other record designated a public record by any official action of the senate or the house of representatives. This definition does not include records that are not otherwise required to be retained by the agency and are held by volunteers who:
  (a) Do not serve in an administrative capacity;
  (b) Have not been appointed by the agency to an agency board, commission, or internship; and
  (c) Do not have a supervisory role or delegated agency authority.

No. 82675-1-I/5

under pain of waiving the argument on review, the goal of prompt agency response might well be subverted.").

DISCUSSION

Washington voters enacted the PRA through a 1972 citizen's initiative and it continues to function as a "strongly worded mandate for broad disclosure of public records." Freedom Found. v. Gregoire, 178 Wn.2d 686, 695, 310 P.3d 1252 (2013). The purpose of the PRA is to "foster governmental transparency and accountability by making public records available to Washington's citizens." Doe ex rel. Roe v. Washington State Patrol, 185 Wn.2d 363, 371, 374 P.3d 63 (2016). The legislature has directed that in undertaking judicial review of PRA claims, "[c]ourts shall take into account the policy of [the PRA] that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.56.550(3).

State agencies are required to disclose public records when requested "unless the record falls within the specific exemptions [listed in] this section, this chapter, or other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1). The "other statute" exemption "applies only if that statute explicitly identifies an exemption; the PRA does not allow a court to imply such an exemption." White v. Clark County, 188 Wn. App. 622, 631, 354 P.3d 38 (2015). Any exemption is narrowly construed to "assure that the public interest will be fully protected." RCW 42.56.030. Agencies carry the burden to prove that a qualified exemption applies to a withheld record. RCW 42.56.550(1); Neighborhood All. of Spokane County. v. Spokane County, 172 Wn.2d 702, 715, 261 P.3d 119 (2011).

5

We review agency actions de novo, including whether the agency properly applied an "other statute" as the basis for withholding a record. Doe ex rel. Roe, 185 Wn.2d at 370-71. Where we review a grant of summary judgment we also engage in de novo review, engaging in the same inquiry as the trial court. Neighborhood All. of Spokane County, 172 Wn.2d at 715. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

DSHS argues that the trial court erred in concluding that DSHS violated the PRA when it denied Hornbuckle's records request. DSHS argues that it properly withheld records because 42 U.S.C. § 1306 qualifies as an "other statute" that prohibits disclosure of federal records created by DSHS as an HHS contractor. The United States agrees with DSHS. We disagree.

RCW 42.56.070(1)'s "other statute" exemption provision is not limited to state statutes, but may include relevant federal statutes and regulations. Freedom Found. v. Washington State Dep't of Transp., Div. of Washington State Ferries, 168 Wn. App. 278, 289, 276 P.3d 341 (2012); Ameriquest Mortg. Co. v. Washington State Off. of Att'y. Gen., 170 Wn.2d 418, 440, 241 P.3d 1245 (2010). The federal statute at issue here, 42 U.S.C. § 1306(a)(1), states in part:

(a) Disclosure prohibited; exceptions

(1) No disclosure of . . . any file, record, report, or other paper, or any information, obtained at any time by the head of [HHS][6] or by any officer or employee of [HHS] in the course of discharging the duties of [HHS] under this chapter, and no disclosure of any such file, record, report, or other paper, or information, obtained at any time by any person from the

---

[6] HHS is the applicable agency. See 42 U.S.C. § 1306(a)(1), 42 U.S.C. § 1306(a)(2) (explaining that in this subsection, the term "applicable agency" can apply to either the Social Security Administration or the Department of Health and Human Services.)

head of [HHS] or from any officer or employee of [HHS], shall be made except as the head of [HHS] may by regulations prescribe and except as otherwise provided by Federal law.  Any person who shall violate any provision of this section shall be deemed guilty of a felony . . . .

The parties disagree whether Downing acted as an employee of HHS under 42 U.S.C. § 1306(a)(1) when she conducted an investigation that served both the State and HHS.  We need not resolve this question because even assuming Downing could be considered a federal employee, we conclude that DSHS does not satisfy its burden to establish an "other statute" exemption as required under RCW 42.56.070(1).

Section 1306 indicates that no disclosures shall be made "except as the head of [HHS] may by regulations prescribe and except as otherwise provided by Federal law." 42 U.S.C. § 1306(a)(1).

42 C.F.R. § 488.325(a)[7] addresses disclosure of results of surveys and activities related to CMS survey, certification, and enforcement procedures.  It provides:

(a) Information which must be provided to [the] public. As provided in sections 1819(g)(5) and 1919(g)(5) of the Act, the following information must be made available to the public, upon the public's request, by the State or CMS for all surveys and certifications of [skilled nursing facilities] and [nursing facilities]:

   (1) Statements of deficiencies and providers' comments.

   (2) A list of isolated deficiencies that constitute no actual harm, with the potential for minimal harm.

---

[7] Created under the authority of 42 U.S.C. § 1302 (directing the Secretary of Health and Human Services to make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which each is charged under this chapter.)  "When Congress has 'explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,' . . .  and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute."  United States v. Mead Corp., 533 U.S. 218, 227, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001) (quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44,104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

  (3) Approved plans of correction.

  (4) Statements that the facility did not submit an acceptable plan of correction or failed to comply with the conditions of imposed remedies.

  (5) Final appeal results.

  (6) Notice of termination of a facility.

  (7) Medicare and Medicaid cost reports.

  (8) Names of individuals with direct or indirect ownership interest in a [skilled nursing facility] or [nursing facility], as defined in § 420.201 of this chapter.

  (9) Names of individuals with direct or indirect ownership interest in a [skilled nursing facility] or [nursing facility], as defined in § 420.201 of this chapter, who have been found guilty by a court of law of a criminal offense in violation of Medicare or Medicaid law.

42 C.F.R. § 488.325(a).[8]

  DSHS and amicus contend that 42 C.F.R. § 488.325 authorizes a state to disclose only the specific categories of information that are listed therein. But the plain language of the regulation directs both CMS and the state as to what they "must" release to the public. Nowhere does the regulation restrict states to *only* release the listed information.

  The regulation also states that the public "may" request the information as specified in 45 C.F.R. pt. 5, which is the Freedom of Information Act (FOIA). 42 C.F.R. § 488.325(c). Further, the regulation provides guidance on responding to requests:

  (e) Procedures for responding to requests. The procedures and time periods for responding to requests are in accordance with—

---

[8] See also 42 U.S.C. § 1395i-3(g)(5)(A) (requiring States and CMS to "make available to the public," e.g., "information respecting all surveys and certifications made respecting skilled nursing facilities, including statements of deficiencies.").

> (1) Section 401.136 of this chapter for documents maintained by CMS; and
>
> *(2) State procedures for documents maintained by the State.*

42 C.F.R. § 488.325(e)(1)-(2) (emphasis added).

Washington "procedures" for responding to documents "maintained by the State" falls under the scope of the PRA. In 1975,[9] our legislature expressly designated DSHS records related to nursing homes as public records:

> Any writing received, owned, used, or retained by the department[10] in connection with the provisions of this chapter is a public record and, as such, is open to public inspection. Copies of such records provided for public inspection shall comply with RCW 42.56.070(1). The names of duly authorized officers, employees, or agents of the department shall be included.

RCW 18.51.290; LAWS OF 1975, 1st Ex. Sess., ch. 99, § 9. By establishing the broad public disclosure of nursing home records, the legislature furthered its intent in enacting chapter 99:

> to establish (1) a system for the imposition of prompt and effective sanctions against nursing homes in violation of the laws and regulations of this state relating to patient care; (2) an inspection and reporting system to insure that nursing homes are in compliance with state statutes and regulations pertaining to patient care; and (3) a mechanism to insure that licenses are issued to or retained by only those nursing homes that meet state standards for resident health and safety.

RCW 18.51.007. Permitting individuals to obtain information that could potentially reveal a nursing facility's noncompliance with state laws and regulations promotes the legislature's interest in maintaining the accountability of these institutions.

Where it is possible to do so, we have an obligation to harmonize statutes.

---

[9] We note that the enactment of RCW 18.51.290 in 1975 predates the 1991 Agreement with the federal government.

[10] The "department" refers to our state DSHS. RCW 18.51.010(2).

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Fisher Broad.-Seattle TV LLC v. City of Seattle, 180 Wn.2d 515, 534, 326 P.3d 688 (2014).  Reading 42 U.S.C. § 1306 and 42 C.F.R. § 488.325 together, indicates that HHS prohibited officers or employees to decide on their own when and how to disclose requested information.  Instead, information should be disclosed either through FOIA requests to CMS for records maintained by CMS, or requests should be made to the State through the State's procedures for documents maintained by the State.  And while both CMS and the State must disclose certain information requested, other information requested should be responded to through the relevant procedures established by CMS and the State.

The documents at issue in this lawsuit "are joint federal and state documents that are in possession of DSHS . . . [and] maintained in a physical file at a DSHS location in Washington state."[11]  A fair reading of 42 C.F.R. § 488.325(e)(2) suggests that the federal regulations regarding disclosure of "results of surveys and activities" can be interpreted in accordance with, or harmonized with, state procedures—such as the PRA—if the documents at issue are simultaneously maintained by the State.

DSHS, without citing any supporting authority, argues that 42 U.S.C. § 1306 provides the exclusive means to access the records at issue.  This court has recognized that the PRA is an improper way to access records where an "other statute" is an "exclusive" means to obtain records.  Wright v. State, 176 Wn. App. 585, 597, 309 P.3d 662 (2013) (citing Deer v. Dep't of Soc. & Health Servs., 122 Wn. App. 84, 92-93, 93 P.3d 195 (2004)).  As already discussed, § 1306 itself allows for disclosure by way of federal regulations and 42 C.F.R. § 488.325 allows for disclosure of information

---

[11] DSHS characterizes the documents as "federal documents" in its briefing but does not dispute that they are also state records.

maintained by the State through the State's procedure. DSHS' argument that § 1306 is the exclusive means to access the records in question is unpersuasive.

Second, for the "other statute" exemption to apply, 42 U.S.C. § 1306 has to "explicitly" identify an exemption, which it does not. See White, 188 Wn. App. at 631.

DSHS failed to meet its burden to show that 42 U.S.C. § 1306 is an "other statute" exemption as contemplated by the PRA under RCW 42.56.070(1). The trial court properly granted Hornbuckle's summary judgment motion.

### Attorney Fees

Hornbuckle requests attorney fees for the case below and on appeal. He also requests up to $100 per day penalty for the withheld records.

A party seeking public records who prevails against an agency in a PRA action "*shall* be awarded all costs, including reasonable attorney fees." RCW 42.56.550(4) (emphasis added). It also permits, in the discretion of the court, to award a party "an amount not to exceed one hundred dollars for each day" that the records were withheld. Id.

DSHS concedes that if we affirm the superior court the PRA requires the court to award costs and reasonable attorney fees. Regarding the per day penalty, DSHS asks this court to remand the case back to the trial court for fact-finding in relation to the penalty request.

We grant Hornbuckle attorney fees and costs on appeal and below. We further direct the trial court on remand to consider Hornbuckle's per-day penalty request and conduct fact-finding, if needed. Trial courts have considerable discretion under the PRA's penalty provisions and may consider multiple factors as mitigating or aggravating

No. 82675-1-I/12

as suggested by our Supreme Court in <u>Yousoufian v. Off. of Ron Sims</u>, 168 Wn.2d 444, 467-68, 229 P.3d 735 (2010).

CONCLUSION

We affirm the summary judgment order. We remand to the trial court for entry of findings and conclusions for the award of attorney fees below and to determine the amount of attorney fees on appeal, as well as consideration of Hornbuckle's per day penalty request.

_____
Coburn, J.

WE CONCUR:

_____      _____
                                       Mann, J.

12